IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                  No. CR 04-1212 JB

SEFERINO P. JOJOLA,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed May 16, 2007 (Doc. 57)("Sentencing Memo"). The Court held a revocation of supervised release and sentencing hearing on May 29, 2007. The primary issue is whether the Court should incarcerate Defendant Seferino P. Jojola or send him to further rehabilitation to assist him in overcoming his alcohol-related problems. While the Court is immensely concerned about Jojola's driving while intoxicated, at some point Jojola will not be under the Court's supervision, and the Court believes that it should use its resources to assist Jojola with his problems rather than focus on punishing him for his recent incident.

**FACTUAL BACKGROUND**

Jojola was born in Albuquerque, New Mexico, is twenty-four years old, and is one of four children, including a half-sister. See Pre-sentence Investigation Report at 1, ¶ 41, at 10, disclosed October 25, 2004 ("PSR"). He is a life-long resident of Isleta Pueblo and has a three-year old child, Seferino Jojola, Jr., with whom he is close. See id. ¶¶ 41, 44, at 10-11; Sentencing Memo at 3. Since his graduation from high school in May, 2001, Jojola has been continuously employed, and

is viewed as a hard and capable worker. See PSR ¶¶ 51-54, at 12.

Jojola suffers from alcohol dependency as a result of years of physical and sexual abuse. See id. ¶¶ 46-50, at 11-12; Memorandum to Court from United States Probation Officer Jason Towne at 1-2, dated April 23, 2007 ("Towne Memorandum"); Sentencing Memo at 3. Jojola represents that he is now cognizant of and accepts his dire need to address the issues that the abuse causes. See Sentencing Memo at 3.

## PROCEDURAL BACKGROUND

Jojola commenced supervised release on July 27, 2007. See Violation Report at 1, dated April 4, 2007. Except for a positive breathalyser test of .0045 on August 13, 2006, and the incident before the Court, he has complied with all respects of his supervision, which has included an intensive supervision program, including four months of home confinement with electronic monitoring and sobriety testing from September 17, 2006 through January 17, 2007. See id. During the period of his supervision, Jojola has attended counseling at Isleta Pueblo Behavioral Health Services for alcohol abuse and post-traumatic stress syndrome. See Towne Memorandum at 1; Sentencing Memo at 2-3.

On March 30, 2007, after getting off work, Jojola went to Graham Central Station in Albuquerque, New Mexico and drank four beers. See Violation Report at 1. On April 1, 2007, at approximately 2:15 a.m., an Albuquerque Police Officer observed Jojola driving erratically and at a high rate of speed. The officer initiated a traffic stop and Jojola was subsequently arrested and charged with Driving While Intoxicated. See id. at 2. As required, Jojola immediately reported the incident to his probation officer. See id. at 1. The Court then issued a warrant for his arrest, and a United States Magistrate Judge subsequently released Jojola to the La Pasada Halfway House, where he has been attending alcohol counseling and Alcoholics Anonymous programs. See Sentencing

Memo at 3.

At the May 29, 2007 hearing, Jojola admitted the allegations contained within the Petition for Revocation of Supervision. See Hearing Transcript at 3:6-4:22 (Jojola)(taken May 29, 2007).[1] Jojola submits a sentencing brief, requesting that the Court release him into the third-party custody of New Moon Lodge Residential Treatment Center (New Moon Lodge), Ohkay Owingeh, New Mexico in lieu of imposing a sentence of incarceration. See Sentencing Memo at 1. Jojola represents that an intensive dual-diagnosis ninety-day inpatient treatment program is available to him at New Moon Lodge, and is the best available source to allow him to address the protracted horrors he suffered as a youth and to begin his life unburdened by his past and as a productive and positive member of the community. See id. at 3-5.

## LAW REGARDING SENTENCING

A sentencing court is permitted to "tailor the sentence" in light of the sentencing factors that Congress has identified in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 234 (2005). The other sentencing factors of 18 U.S.C. § 3553(a) are:

> (a) Factors to be considered in imposing a sentence. -- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the sentence to be imposed, shall consider –
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed –
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

>   (B) to afford adequate deterrence to criminal conduct;
>
>   © to protect the public from further crimes by the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> \* \* \* \*
>
> (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victim of the offense.

18 U.S.C. § 3553(a). One court has stated that "[t]he directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.'" United States v. Ranum, 353 F. Supp. 2d 984, 985 (E.D. Wis. 2005)(quoting United States v. Wilson, 350 F. Supp. 2d 910, 912 (D. Utah 2005)). In any case, United States v. Booker directs sentencing courts "to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore." United States v. Wilson, 350 F. Supp. 2d at 912. "[C]ourts are free to disagree, in individual cases in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to § 3553(a) factors." Id.

As the Ranum court noted, the Sentencing Guidelines generally forbid consideration of factors such as age, employment record, family ties and responsibilities, and socio-economic status.

> The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range.

United States v. Ranum, 353 F. Supp. 2d at 986.

## ANALYSIS

Jojola's recent incident concerns the Court greatly, especially given that Jojola's reckless actions have already caused the death of his cousin and scarred his entire family. See PSR ¶¶ 8-21, at 3-5. On the other hand, there will come a day when Jojola is not under federal supervision and, without treatment, will be a threat to others, particularly on the road. The Court concludes that it would be best to use its time and resources trying to assist Jojola get over his alcohol problem, rather than incarcerate him further.

### 1.     Nature and Circumstances of the Offense.

This latest incident is very serious. While on supervised release, Jojola drank four beers and then drove a vehicle in a legally intoxicated state. See Violation Report at 1-2. Jojola cannot be allowed to drink and drive. The Court believes that Jojola is a danger to the community. This factor weighs heavily in favor of incarceration, at the high end of the range or even above the range.

### 2.     Jojola's History and Characteristics.

Jojola has had a sad life. See PSR ¶¶ 46-50, at 11-12. Nevertheless, Jojola cannot drink and drive. The question is whether the shock of more incarceration will get that message across to Jojola or whether the Court should focus its resources and effort on more rehabilitation. The Court does not believe that this factor points strongly in either direction, but slightly favors incarceration.

### 3.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

Jojola represents that the period of incarceration he has already served has taught him a severe lesson and, when he receives the necessary counseling to address the issues of his past, constitutes sufficient punishment to deter any future alcohol abuse. See Sentencing Memo at 3-5.

The Court is concerned that such an approach does not impress on Jojola, or emphasize to society, the seriousness of the offense. Nevertheless, the Court believes that it can come as close to promoting respect for the law with a serious rehabilitation program as it can with more incarceration.

The Court believes that just punishment for the current offense is incarceration and perhaps for a lengthy period. Nevertheless, the Court does not think this factor points strongly in that direction. The Court believes that a lengthy rehabilitation program can come close to reflecting the seriousness of the offense, to promoting respect for the law, and to providing as just a punishment for the offense as more incarceration.

### 4. **To Afford Adequate Deterrence to Criminal Conduct.**

Jojola contends that, under the unique circumstances of this case, further incarceration would not deter future alcohol abuse. The Court is convinced that Jojola may be accurate in that assessment. Jojola has convinced the Court that only competent therapy will serve as a potential cure and, in the long run, deterrence to criminal conduct.

### 5. **To Protect the Public From Further Crimes by Jojola.**

Obviously, in the short run, the most effective way to protect the public from further crimes by Jojola would be to lock him up. On the other hand, the Court cannot incarcerate Jojola indefinitely. At some point, federal supervision will come to an end, and he will be free in society without supervision. To protect the public in the long run, the Court needs to focus on rehabilitation. While this factor weighs in favor of incarceration, it does not weigh heavily in that direction.

### 6. **To Provide Jojola with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

New Moon Lodge, with followup at Isleta Pueblo Behavioral Health Services, will provide

the level of care that Jojola needs. Jojola requests that the Court release him into the third-party custody of New Moon Lodge in lieu of imposing a sentence of incarceration in this case. The unique circumstances of this case call for a carefully crafted disposition to provide Jojola with the tools that he needs to avoid any future criminal conduct. This factor weighs heavily in favor of treatment rather than further incarceration.

After considering the factors that 18 U.S.C. § 3553(a) sets forth, the Court finds that a sentence of further incarceration is not necessary or warranted in this case. Jojola's release to the New Moon Lodge ninety-day inpatient program, with outpatient follow-up and continued monitoring at Isleta Pueblo Behavioral Health Services is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). It is not always easy to get a bed at the New Moon Lodge, and if the Court tries to interject more incarceration before rehabilitation, it may miss the opportunity to get Jojola the rehabilitation he needs. Moreover, the Court has made arrangements for Jojola to stay in the half-way house one more night so that he can go into the New Moon Lodge without going home. Further, the State of New Mexico has suspended Jojola's driver's license, and his mother will drive him to the New Moon Lodge. Jojola will not be able to drive again without the Court's order. Given that rehabilitation will be followed with another lengthy supervised release, the Court believes that this sentence will promote the goals of sentencing and give Jojola one last opportunity to get his craving for alcohol under complete control.

**IT IS ORDERED** that Jojola is released to the third-party custody of the New Moon Lodge Residential Treatment Center for an intensive treatment program, with outpatient followup and continued monitoring at Isleta Pueblo Behavioral Health Services.

                                      */s/ James O. Browning*
_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Camille Bibles
Kim Hare
  Assistant United States Attorney
Phoenix, Arizona

    *Attorneys for the Plaintiff*

Floyd W. Lopez
Floyd W. Lopez, P.A.
Albuquerque, New Mexico

    *Attorney for the Defendant*